# UNITED STATES DISTRICT COURT

for the

Southern District of California

**FILED**

FEB **2 0** 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| In the Matter of the Search of | )|  |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| One black Samsung Model: Galaxy S7 IMEI No: 35742507853104 | ) ) ) | 2 0 M J 0 8 7 7 1 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ **SOUTHERN** _____ District of _____ **CALIFORNIA** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Federico Espinoza
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **2/20/2020**

_____
*Judge's signature*

City and state: EL CENTRO, CALIFORNIA

HON. RUTH BERMUDEZ MONTENEGRO, U.S. MAG. J.
*Printed name and title*

## **ATTACHMENT A**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One black Samsung
> Model: Galaxy S7
> IMEI No: 35742507853104
> Seized from PALOMARES, Giovani
> **(Target Device #1)**

> One black Tracfone
> Model: A501DL
> IMEI No: 015293002440430
> Seized from PALOMARES, Giovani
> **(Target Device #2)**

**Target Device #1 and Target Device #2** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.



## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 6, ~~2020~~, up to and including February 6, 2020, and is limited to the following:          *2019* FE

   a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e.   tending to identify the user of, or persons with control over or access to, the **Target Devices**;

   f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the harboring of illegal aliens in violation of 8 U.S.C. § 1324.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Federico Espinoza, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> One black Samsung
> Model: Galaxy S7
> IMEI No: 35742507853104
> Seized from PALOMARES, Giovani
> **(Target Device #1)**
>
> One black Tracfone
> Model: A501DL
> IMEI No: 015293002440430
> Seized from PALOMARES, Giovani
> **(Target Device #2) (collectively "Target Devices")**

as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.      The requested warrants relate to the investigation and prosecution of Giovani PALOMARES (PALOMARES) for harboring of illegal aliens Ezequiel COLIMA-Villanueva (COLIMA), Omar MALDONADO-Ramirez (MALDONADO), Alejandra MORALES-Mota (MORALES), Jose Ruben MOTA-Cortez (MOTA), Eduardo SERENO-Armas (SERENO), Marcelino SERENO-Armas (SERENO-Armas) and Ismael J. RAMIREZ-Maldonado (RAMIREZ) (collectively, the "Material Witnesses") in violation of 8 U.S.C. § 1324 within the Southern District of California. The **Target Devices** were seized from PALOMARES on or about February 5, 2020, incident to PALOMARES' arrest. The **Target Devices** are currently in the possession of the Department of Homeland

1

Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.   Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.   I am a United States Border Patrol Agent and have been so employed since 2011. I am currently assigned to the El Centro Sector Calexico Station, and I am currently a member of the El Centro Sector Prosecutions Unit. I am a graduate of the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico and a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

5.   In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.   During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

1      7.    Through the course of my training, investigations, and conversations with

2 other law enforcement personnel, I have gained a working knowledge of the operational

3 habits of alien smugglers and alien transporters, in particular those who attempt to smuggle

4 aliens into the United States from Mexico and transport them throughout the Southern

5 District of California. I am aware that it is a common practice for alien smugglers to work

6 in concert with other individuals and to do so by utilizing cellular telephones to maintain

7 communications with co-conspirators and/or illegal aliens in order to further their criminal

8 activities. Because they are mobile, the use of cellular telephones permits alien smugglers

9 and transporters to easily carry out various tasks related to their smuggling activities,

10 including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

11 providing instructions to transporters, guiding aliens to specific pick up locations, warning

12 accomplices about law enforcement activity in the area and the status of check-point

13 operations, and communicating with co-conspirators who guide aliens, coordinate drop off

14 locations, and/or operate alien stash houses.

15      8.    The smuggling of aliens generates many types of evidence, including, but not

16 limited to, cellular phone-related evidence such as voicemail messages referring to the

17 arrangements of travel, names, photographs, text messaging (via SMS or other

18 applications), and phone numbers of co-conspirators and illegal aliens. For example,

19 drivers and passengers responsible for transporting illegal aliens are typically in telephonic

20 contact with co-conspirators immediately prior to and/or following the crossing of the

21 illegal aliens at the border, at which time they receive instructions, including where to pick-

22 up the illegal aliens for transportation into the United States and where to take the illegal

23 aliens after crossing into the United States. These communications may also include

24 locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in

25 telephonic contact with co-conspirators prior to and following their crossing in order to

26 make smuggling arrangements, receive instructions, and report their locations after

27 crossing.

28

9.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

4

1     f.     tending to place in context, identify the creator or recipient of, or establish
2          the time of creation or receipt of communications, records, or data involved
          in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

11.    On February 5, 2020, Border Patrol Agents (BPA) assigned to the El Centro, Sector Intelligence Unit (SIU) were conducting anti-smuggling and intelligence gathering duties within the El Centro Border Patrol Sector's area of responsibility. The agents were dressed in plain clothes and operating unmarked service vehicles in an attempt to blend with the public and covertly search for criminal activity. The agents involved in this event are BPA S. Ley, BPA L. Heipt, BPA F. Zamora, and Supervisory Border Agent-Intelligence (SBPAI) M. Clinton.

12.    At approximately 2:30 p.m., SBPAI Clinton was contacted by BPA Villanueva who stated he was conducting surveillance at the Motel 6 located at 395 Smoketree Drive in El Centro, California. BPA Villanueva stated that he had witnessed three or four possible illegal aliens be delivered to the motel in a black Chevrolet Avalanche. BPA Villanueva stated that the aliens were dressed in dark clothing and carrying backpacks which is consistent with aliens crossing through the Laguna Mountains near Ocotillo and/or Boulevard, California. BPA Villanueva notified SBPAI Clinton that BPA R. Munoz had additional information regarding the Chevrolet Avalanche. BPA R. Munoz stated that an unknown woman had contacted the Campo Border Patrol Station on the morning of February 5, 2020, stating that her boyfriend was driving her black Chevrolet Avalanche from San Diego to El Centro, California to pick up narcotics. The woman stated that the vehicle was bearing California plates. BPA R. Munoz located a vehicle matching the description provided at a Super 8 Motel located at 1575 Ocotillo Drive in El Centro, California.

13.    After locating the Chevrolet Avalanche, BPAs set up a perimeter and began surveillance. BPAs noticed that the occupants of the Chevrolet Avalanche were a male and a female with dyed red hair. The occupants were later identified as PALOMARES and Chelesea Ann SMITH (SMITH). BPAs noticed that PALOMARES

1  and SMITH appeared to have rented two rooms at the Super 8 Motel on 1575 Ocotillo
2  Drive as they were going back and forth from room to room.  BPAs also noticed that
3  several subjects had left one room and entered the Chevrolet Avalanche after
4  housekeepers had gone into a room. Based on their training and experience, BPAs
5  believed that PALOMARES and SMITH feared being discovered and decided to escort
6  the subjects to a different motel.

7      14.     PALOMARES entered the lobby of the Motel 6 at 395 Smoketree Drive
8  and, after leaving the lobby, he then proceeded to escort several people to the upper
9  floor of the Motel 6 at Smoketree Drive. BPAs followed the Avalanche back to the
10  Super 8 Motel at Ocotillo Drive where it again picked up several subjects and drove
11  them back to the Motel 6 at Smoketree Drive. Based on the tip from the anonymous
12  caller and their training and experience, the agents suspected that PALOMARES and
13  SMITH were engaged in an alien smuggling scheme.

14      15.     At approximately 3:30 p.m., Field Intelligence Team (FIT) from the
15  evening shift arrived to continue surveillance at the Motel 6. On the course of the day
16  BPA's noticed the Chevrolet Avalanche driving around the towns of El Centro and
17  Seeley then head west towards San Diego County on Interstate 8. At that point, BPAs
18  terminated surveillance on the Avalanche and focused their efforts at the Motel 6,
19  believing there were illegal aliens in the rooms.

20      16.     At approximately 6:00 p.m., SBPAI Clinton called the Campo Border
21  Patrol Station Checkpoint in Pine Valley, California. SBPAI Clinton spoke with SPBA
22  J. Peters and advised that the black Chevrolet Avalanche was headed westbound and it
23  had delivered suspected illegal aliens to motels in the El Centro area. At approximately
24  6:40 p.m., SBPA Peters informed SBPAI Clinton that the Chevrolet Avalanche was in
25  secondary and the agents at the checkpoint had located methamphetamine in the vehicle.

26      17.     At approximately 6:45 p.m., the FIT knocked on room 216 and were met
27  by four Hispanic males. The agents interviewed the men and determined that they were
28  illegal aliens from Mexico. BPAs then walked to room 251, knocked on the door and

6

1   announced themselves as BPAs. BPAs encountered two males and one female, after a
2   brief interview it was determined they were citizens of Mexico. It was then determined
3   that the seven illegal aliens, later identified as Ezequiel COLIMA-Villanueva
4   (COLIMA), Omar MALDONADO (MALDONADO), Alejandra MORALES-Mora
5   (MORALES), Jose Ruben MOTA-Cortez (MOTA), Eduardo SERENO-Armas (E.
6   SERENO-Armas), Marcelino SERENO-Armas (M. SERENO-Armas), and Ismael J.
7   RAMIREZ-Maldonado (RAMIREZ), were citizens of Mexico without the proper
8   immigration documents to enter, reside, or work in the United States illegally.

9       18.    After the aliens were detained, SBPAI Clinton contacted SBPA Peters at
10   the checkpoint and asked him to place PALOMARES and SMITH under arrest for 8
11   U.S.C. § 1324 Alien Smuggling. During the search incident to arrest of PALOMARES,
12   BPA Leblanc discovered two black cell phones, **Target Device #1,** and **Target Device**
13   **#2**, from the vehicle. The cell phones were seized as possible evidence. PALOMARES
14   claimed ownership of the **Target Devices** as identified above and in Attachment A,
15   incorporated herein by reference.

16       19.    Post-arrest, the Material Witnesses stated they were going to pay
17   approximately $7,500 United States dollars to be smuggled into the United States. Material
18   Witnesses MALDONADO, MORALES, MOTA, and M. SERENO-Armas, were able to
19   identify PALOMARES as the driver of the black Chevrolet Avalanche from a six-pack
20   photo lineup.

21       20.    PALOMARES and SMITH were charged by Complaint on February 6, 2020
22   in Case No. 20MJ8476-RBM. The matter is currently set for continued Preliminary
23   Hearing and Arraignment on March 5, 2020.

24       21.    Based upon my experience and investigation in this case, I believe that
25   PALOMARES, and other persons, as yet unknown, were involved in an alien smuggling
26   venture and that PALOMARES used the **Target Devices** to coordinate with the as yet
27   unknown persons to bring the aliens into the United States and/or transport them further
28   into the United States. Additionally, I believe that recent calls made and received,

telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in alien smuggling activities.

22.   I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the **Target Devices** for data beginning on November 6, 2019, up to and including February 6, 2020, the day after PALOMARES' arrest

## METHODOLOGY

23.   It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices

8

that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//
//
//

9

1

**CONCLUSION**

2    26.    Based on all of the facts and circumstances described above, I believe that
3  probable cause exists to conclude that the PALOMARES and the Material Witnesses used
4  the **Target Devices** to facilitate the offense of alien smuggling.  The **Target Devices** likely
5  were used to facilitate the offense by transmitting and storing data, specifically that
6  described in Attachment B, which constitutes evidence of violations of Title 8, United
7  States Code, Section 1324.  I also believe that probable cause exists to believe that evidence
8  of illegal activity committed by PALOMARES and others continues to exist on the **Target**
9  **Devices**.  Therefore, I respectfully request that the Court issue this warrant.

10              I swear the foregoing is true and correct to the best of my knowledge and
11  belief.

12
13                                          Federico Espinoza
14                                          Border Patrol Agent
                                            U.S. Border Patrol
15

16  Subscribed and sworn to before me this ____ day of February 2020.
17

18
19  _____
20  HON. RUTH BERMUDEZ MONTENEGRO
    UNITED STATES MAGISTRATE JUDGE
21
22
23
24
25
26
27
28

10

## ATTACHMENT A
### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One black Samsung
> Model: Galaxy S7
> IMEI No: 35742507853104
> Seized from PALOMARES, Giovani
> **(Target Device #1)**

> One black Tracfone
> Model: A501DL
> IMEI No: 015293002440430
> Seized from PALOMARES, Giovani
> **(Target Device #2)**

**Target Device #1 and Target Device #2** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.



## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of November 6, 2020, up to and including February 6, 2020, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the harboring of illegal aliens in violation of 8 U.S.C. § 1324.